M4s2RosS kjc

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    UNITED STATES OF AMERICA,              New York, N.Y.

 4              v.                           21 Cr. 3 (JSR)

 5    STEVE ROSADO,

 6              Defendant.

 7    ------------------------------x       Sentencing

 8                                           April 28, 2022
                                             11:00 a.m.
 9

10    Before:

11                          HON. JED S. RAKOFF,

12                                           District Judge

13

14                          APPEARANCES

15
      DAMIAN WILLIAMS
16         United States Attorney for the
           Southern District of New York
17    BY:  JONATHAN BODANSKY
           JANE CHONG
18         Assistant United States Attorneys

19
      FEDERAL DEFENDERS OF NEW YORK
20         Attorneys for Defendant
      BY: MARISA CABRERA
21

22

23    Also Present:

24    S.A. Elizabeth Jensen, FBI

25    S.A. Thomas Thompson, FBI
```

M4s2RosS kjc

1          (Case called).

2          THE DEPUTY CLERK:  Will the parties please identify

3     themselves for the record.

4          MR. BODANSKY:  Good morning, your Honor.  AUSA

5     Bodansky and Jane Chong for the government.  We are joined by

6     Special Agents Tom Thompson and Elizabeth Jensen.

7          THE COURT:  Good morning.

8          MS. CABRERA:  Good morning, your Honor.  Marisa

9     Cabrera, of Federal Defenders, on behalf of Mr. Rosato.

10         THE COURT:  Good morning.

11         All right.  So, we are here for sentencing.

12         The first item of business is to calculate the

13    guidelines.  So the probation office in the presentence report

14    calculates it as a total offense level of 36, a criminal

15    history category of V, and a guideline range, which is not

16    binding on the Court, but which the Court must consider, of 292

17    to 365 months.

18         Any disagreement with that from the government?

19         MR. BODANSKY:  No, your Honor.

20         THE COURT:  Any from the defense?

21         MS. CABRERA:  No, your Honor.

22         THE COURT:  So the Court also agrees and will adopt

23    that calculation, and it also will adopt the presentence

24    report.

25         So there is, of course, a mandatory minimum here, but

M4s2RosS kjc

1    we need to talk about what the sentence should be under Section

2    3553(a) of Title 18.

3              So let me hear first from defense counsel, then from

4    government counsel, then from the defendant if he wishes to be

5    heard.

6              And why don't you go to the rostrum and then you can

7    take off your mask there.

8              MS. CABRERA:  Thank you, Judge.

9              Your Honor, 15 years is a sufficiently harsh,

10   punitive, and deterrent sentence.  Even with the minimum

11   sentence of 15 years, Mr. Rosato will be released at the

12   earliest when he is 57 years old.  And even that might not be

13   right because, upon the conclusion of his sentence, he will be

14   evaluated for civil confinement and, from that time on, the BOP

15   will make a determination as to whether or not he is an

16   appropriate candidate for civil confinement, and then he will

17   then execute a remainder of time in BOP custody apart from the

18   incarceratory sentence.

19             Fifteen years would simply allow the BOP to make an

20   earlier evaluation if further intensive sex offender treatment

21   is necessary for Mr. Rosato, and we would ask this Court to --

22             THE COURT:  Well, it does seem that he did not -- that

23   his prior training did not relieve him from committing the

24   instant offense.

25             MS. CABRERA:  Well, we would disagree with that

M4s2RosS kjc

1    characterization, your Honor.  From 20 --

2            THE COURT:  Well, you are not disagreeing that he

3    committed the instant offense.

4            MS. CABRERA:  Correct.  However, we are arguing that

5    he was in fact rehabilitated for that time.  However, with the

6    pandemic—a once in a lifetime event—he in effect relapsed.  All

7    of the tools that he had learned from Gowanda sex offender

8    treatment, all of the treatment programs that he had done, and

9    all of the tools that he had employed, he had an apartment, he

10   had a social life, he had a girlfriend of an appropriate age.

11   He participated in guitar lessons and Comic Con.  He went to

12   concerts, movies.  He had an incredibly to robust social life.

13   And these were the tools that allowed him to ensure that he was

14   not reoffending.

15           And he recognizes and, quite frankly, the Courts

16   agree, the New York State of Board of Examiners, first, he

17   contacted appellate counsel at the Center for Appellate

18   Litigation to file a petition called modification of the sex

19   offender registry.  He was originally designated a level III,

20   the highest risk of reoffense.  They reviewed his history, they

21   reviewed his -- the fact that he was employed, his connections,

22   and all of the factors that I had just noted to your Honor, and

23   they determined that a reduction to a level II was appropriate,

24   that they would not oppose it.  And Judge Merchan, out of the

25   New York State Supreme Court, agreed and reduced his level to a

M4s2RosS kjc

level II.

            While there is no disputing that he did in fact commit

this offense and that the offense is incredibly serious,

Mr. Rosato, I think, through his history has shown that he can

be rehabilitated, that he is amenable to it.  And I would say

his conduct while he's been incarcerated is really a testament

to that fact.

            Your Honor has seen plenty of defendants appear before

you who simply have said I haven't participated in programming

at the facility because there has been no programming, and

that's been correct.  However, Mr. Rosato, on his own volition,

has sought out rehabilitative programming outside of MDC that

he's been able to do with Emma Familli, a social work intern at

our office, who is actually here today.  Mr. Rosato has

completed a host of programs related to his sex offender

conduct, personal responsibility, healthy relationships.  He's

received a GED tutor certificate.  He completed a Gospel of

John bible study course, and the vast -- I think maybe with the

exception of the GED tutor certificate and perhaps the healthy

relationship certificate everything else has been on his own.

He's worked on a weekly basis with Ms. Familli, and he sought

that out.  He did that on his own.

            I think it really goes to show you his interest and

his investment in his future and his self.  This is a person

who wanted to become an attorney, and he took all the steps to

M4s2RosS kjc

do that.  You know, he started off with an internship program
where -- once he was released from state custody in 2013, he
started off with an internship program, working with Gary
Villanueva, and he did such an amazing job that Mr. Villanueva
hired him full-time after the internship ended.

He then continued on to other areas of work, the most
recent being immigration work for the Law Office of Adam
Kopochian.  And as you can see from the letters of
Mr. Kopochian and Mr. Villanueva, as well as all of his
colleagues at these offices where he's previously worked, I
mean, he's really done incredible for himself during that time
that he was out.  As your Honor even believed, the motions that
he had filed that we later withdrew, your Honor believed that
to be written by an attorney.

He's an incredibly smart, bright man and, you know,
it's been painful, I think, this process, not just only for,
you know, all those involved, including his family, which, by
the way, is here.  His father is here, as well as his aunt.
But I think it's really been a painful prospect for him just in
terms of what's been lost for himself and his future.

You know, he did have all intent to move forward with
proceeding to law school.  He was studying for his LSATs.  He
went and he was doing CLE programming, you know, and he worked
not just -- not just pre-pandemic, but even during the
pandemic.  You know, I think it was a real toll on him that he

M4s2RosS kjc

1    wasn't able to be in the office, wasn't able to be around his

2    work colleagues, or his clients, and he would try and return as

3    much as he possibly could.

4            But I think it really just speaks to who he is, the

5    future he wanted for himself, and how that has been lost.  And

6    this is certainly a cautionary tale for anyone who might

7    struggle with these same issues that Mr. Rosato struggles with.

8    It is certainly incredibly deterrent for him to engage in

9    future conduct and, quite frankly, the likelihood that he even

10   will or will be able to is pretty low given the fact of his age

11   upon release and the likelihood of civil confinement

12   thereafter.

13           So, again, given this history, I won't go through his

14   history of abuse.  It was noted pretty thoroughly in our

15   submission.  But I do want to note that, despite all of the

16   odds against him initially, he really had done remarkable

17   things for himself in those seven years that he was out prior

18   to the conduct in this case.  And for those reasons, we do

19   believe a sentence of 15 years, a decade and a half, is

20   sufficiently harsh here to punish Mr. Rosato, and we would ask

21   for a supervised release term of five years thereafter.

22           Thank you, your Honor.

23           THE COURT:  Thank you.

24           And let me hear from the government.

25           MR. BODANSKY:  We obviously set forth the core

M4s2RosS kjc

1    arguments we have in our written submission, so I won't rehash

2    them here, but I do want to address a few points raised by

3    defense in their written submissions and today that I think

4    speak to why the government believes a sentence greater than

5    the 15-year mandatory minimum is warranted in this case.

6          I think, first, it is important to note that really

7    throughout all of their submissions the defense has failed to

8    truly acknowledge the nature of the offenses here and has tried

9    to portray this really as a case that it is not.

10          For example, on page 6 of its brief, the defense

11   states that in October 2020, seven months into the pandemic,

12   Mr. Rosato began communicating with persons that identified

13   themselves as females under the age of 18 and asked them to

14   send him photos, some of which were sexual in nature.  That's

15   all true, but that falls far short of actually capturing the

16   offense conduct in this case.  For one thing, the persons he

17   was communicating with did not just identify themselves as

18   under 18 years old.  Some identified themselves as as young as

19   13 years old.

20          But more importantly, he didn't just ask these

21   purported minors to send him photos.  Really, a better way to

22   characterize what he tried to do was convince them to become

23   his live-in sex slaves.  For months, across multiple

24   conversations, he tried to convince seemingly troubled teens

25   elsewhere in the country to move to New York to live with him

M4s2RosS kjc

1    so long as they agreed to live by his terms, which involved him

2    being able to have unprotected sex with them as desired as

3    often as he wished, him being allowed to impregnate them, and

4    then ultimately his intention to have sex with their children

5    once they were old enough, which he stated was 12 to 13 years

6    old.  That's a far cry from the way his conduct is described in

7    the defense submission, and the defense just fails to fully

8    address the gravity of the offenses here.

9            The defense's account of the timing of these offenses

10   is also misleading in a critical way.  As I just noted, really,

11   the account that the defense gives here is that the conduct

12   began in earnest in October of 2020 largely as the result of

13   the very difficult circumstances the defendant was under during

14   the pandemic, and as the months of the pandemic wore on, he

15   finally, in their words, relapsed and reengaged in this conduct

16   in October 2020.  But in fact and as the government has shared

17   in discovery and in pretrial notices, this case was a referral

18   from another F.B.I. office which -- from back in March 2020.

19           So in fact, another F.B.I. office had an undercover

20   conversation with the defendant in March 2020, not October

21   2020, and that conversation progressed much like the

22   conversations here.  The undercover identified herself to be 13

23   years old, and the defendant proceeded to try to convince that

24   individual to move to New York to live with him and to have sex

25   with him and he expressed his intention to impregnate that

M4s2RosS kjc

person.  Again, that was March 2020, mere weeks into the
pandemic, not months into the pandemic.  Nowhere in the
submissions does the defense address that fact, and I think
that really undercuts the narrative here about what drove the
defendant in October to commit the other instant offenses.

        Fundamentally, I think the defense tries to
characterize this as a case of a troubled individual who, after
enduring those months of the pandemic, turned to child
pornography online, but that just doesn't capture the offense
here.  In fact, the defendant's intentions were far more
dangerous.  He attempted over many weeks and across many
conversations to engage in really horrific hands-on offenses
with multiple children.  Again, he began that conduct much
earlier than October 2020.

        It is also important to note there is no suggestion
here that any of this was fantasy or that he did not intend to
follow through with any of this.  There is no claim of that
anywhere in the defense's submissions or the defendant's
letter.  And indeed, the evidence would not support that.  When
the defendant finally found a seemingly willing participant in
the undercover F.B.I. agent involved in this case, he showed
every indication of following through with that and was caught
at the final moments and arrested by the F.B.I.

        Similarly, defendant sort of misleadingly or
incompletely characterizes some of his prior offense conduct.

M4s2RosS kjc

1    So, for example, with respect to his first conviction in 2004,

2    the defense states, on page 3 of its brief, that "after losing

3    his mother, the defendant turned to pornography and then at

4    some point found child pornography."  Again, that's true; but,

5    again, also not the full story.

6         The PSR makes clear that, with respect to that

7    offense, the defendant not only possessed child pornography,

8    but also stalked and attempted to kidnap a 13-year-old girl.

9    And it was during the pendency of that case that he engaged in

10   the conduct that led to his second conviction which involved,

11   when he was 24 years old, having sexual intercourse with a

12   14-year-old 24 times.

13        I think the fact that the defense and the defendant

14   never really fully addressed the gravity of all of these

15   offenses illustrates the defendant really has not yet come to

16   terms with the gravity of what he has done and has not yet

17   fully expressed adequate remorse for them.  And there is one

18   other thing left out of his submissions that's noted in the PSR

19   and in the government's papers.  Not only did the defendant

20   engage in all of the conduct just discussed, but a review of

21   the defendant's electronic devices also revealed that around

22   the same time in late 2020 the defendant was engaged in an

23   actual sexual relationship with a 16-year-old.  Nowhere

24   anywhere in the defense's submissions does the defendant

25   address that conduct, that very serious conduct, as well.

M4s2RosS kjc

1          So, again, I think the failure of the defendant to

2     address these things shows a lacking of remorse.  And indeed

3     when reviewing the defendant's letter, he expresses remorse in

4     a number of respects and he apologized to a number of parties,

5     but nowhere does he apologize to the actual minors with whom he

6     communicated and nowhere does he fully acknowledge the horrific

7     consequences that could have occurred had the F.B.I. not

8     intervened in this case.

9          So I think the government's view is that all of this

10    underscores why a sentence greater than 15 years, the mandatory

11    minimum, is necessary here and warranted here.  Obviously, he

12    is subject to the 15-year mandatory minimum as a result of

13    having pled guilty to Count Three, but that's the bare minimum

14    sentence for any defendant convicted of the offense charged in

15    Count Three which involves attempted possession of child

16    pornography.  But for all the reasons discussed, the

17    defendant's conduct is far worse than the bare minimum

18    necessary to meet the elements of that offense.

19          For one thing, he has not one but two prior sex

20    offenses involving children.  And equally important, again, he

21    did not merely attempt to receive child pornography, he went

22    far beyond that in terms of what he was attempting to

23    accomplish.

24          And I think actually some of the cases that are cited

25    by the defendant in their submission further support the

M4s2RosS kjc

government's position that a sentence greater than 15 years is

warranted here.  The defense goes through a number of different

cases, but it's noteworthy, at least the defense gives no

indication that any of those cases involve a recidivist sex

offender like the defendant, let alone a twice recidivist sex

offender like the defendant; and yet, nevertheless, many of

those defendants—I think approximately half—did receive

sentences greater than 15 years.

And the one case that the defense cites from this

Court *United States v. Khan*, I think, points in the same

direction.  The defense suggests that the mandatory minimum

there was 15 years.  The government's understanding is that

the mandatory minimum in that case was in fact ten years.  But

notwithstanding the ten-year mandatory minimum, the Court

sentenced that defendant to 17 years, substantially above the

mandatory minimum.

And in some ways my understanding is that the conduct

there was worse than here.  I think the offense progressed much

further there, and a real victim was harmed in a very real way

in that case.  But what the defendant attempted to do here was

no less significant and in some ways even worse and, more

importantly, the defendant in *Khan* had no prior sex offense

convictions.  Here, the defendant has two.  The defendant in

that case was also 21 at the time that the offenses began.

The defendant here was in his forties.  So for all those

M4s2RosS kjc

1  reasons, the fact that that defendant received a 17-year

2  sentence on a ten-year mandatory minimum I think only further

3  reinforces the government's position here as with respect to

4  this defendant.

5        The government's view, at bottom, is that this

6  defendant is extraordinarily dangerous and poses an

7  extraordinary risk of reoffending again.  For an extended

8  period of time, he attempted to engage in hands-on offenses

9  with children.  He did all of this after being convicted twice

10  before of sex offenses involving children.  And for those prior

11  offenses he was sentenced to an eight-year term -- he was

12  incarcerated for approximately eight years.  That eight-year

13  period of incarceration appeared to do very little to prevent

14  him from reoffending again.  Again, I know the defense suggests

15  that it did successfully prevent him from reoffending

16  temporarily, until he encountered the pandemic.  I think we

17  have already noted how that narrative does not fully square

18  with the evidence here.

19        But nevertheless, the pandemic was extraordinary, of

20  course, but hardship is not, and there is nothing to say that

21  the defendant will not encounter hardship again in his life.

22  And he's given the Court no reason, no assurance that if he

23  were to encounter hardship again, after being released, he

24  would not again return to this conduct, as he's done three

25  times already.

M4s2RosS kjc

1          The government also takes little comfort in the

2     rehabilitative efforts that the defense has cited.  The

3     programming that he's participated in, the government is

4     pleased to see it, of course, but the defendant has

5     participated in programming like that in the past.  He did a

6     two-year intensive sex offender treatment program during his

7     prior term of incarceration and intensive outpatient counseling

8     from 2013 to 2018.  Again, we commend the defendant for doing

9     that programming, but that did not suffice to prevent him from

10     reoffending.

11          So for all of these reasons and those cited in our

12     brief, the government respectfully submits that a sentence

13     significantly greater than the 15-year mandatory minimum is

14     warranted here.

15          THE COURT:  All right.  Let me hear from the defendant

16     if he wishes to be heard.

17          THE DEFENDANT:  One moment, your Honor.

18          (Defense counsel and defendant confer)

19          MS. CABRERA:  Mr. Rosato chooses to rest on his letter

20     to the Court.

21          THE COURT:  All right.  So as often in sentences, my

22     heart goes out to the friends and family of the defendant who,

23     in some ways, are themselves victims of the defendant's

24     misconduct because they recognize how much potential Mr. Rosato

25     had and how impulses, that undoubtedly strong, undoubtedly

M4s2RosS kjc

```
1    difficult to resist, but nevertheless had to be resisted for

2    the protection of children, were in the end not only the source

3    of his misconduct but the source of his ruination of his

4    otherwise promising life.  So there is nothing but sad

5    consequences in this situation.

6            The government I think rightly points out that we have

7    here both a recidivist and also someone whose intentions went

8    well beyond what I see in more conventional cases of accessing

9    child porn or things like that.  This was a far more dangerous,

10   far more vicious situation, and it is unfortunate that the

11   state of modern psychology, psychiatry, and neuroscience is

12   such that it cannot permanently cure people with these

13   impulses.  But what we have here is a defendant who went beyond

14   every social protection of children imaginable.  So I agree

15   with the government that a sentence even beyond 15 years -- and

16   I don't mean to minimize the point made by defense counsel that

17   15 years is itself a severe penalty, but I think more is called

18   for here.

19           At the same time, no fellow human being is beyond

20   redemption.  On any analysis, when the defendant gets released

21   from prison, he will be of an age when it is less likely that

22   he will engage in these kinds of activities just because, if

23   nothing else, hormonal changes in the body.  And it cannot be

24   denied that he would still have the potential at that point to

25   lead a positive life with all of those promises and all of
```

M4s2RosS kjc

1    those capabilities that he has shown in the positive side of

2    his life.

3          So weighing all of those factors together, as well as

4    all of the other factors under Section 3553(a) of Title 18, I

5    think the right sentence is 20 years.

6          So the sentence of the Court is that the defendant is

7    it sentenced to 240 months, concurrently on both counts.  I

8    think lifetime supervised release is called for here because I

9    don't think we can take for granted that he will, even with all

10   the efforts being made, overcome impulses that are obviously

11   very deep-seated.  So lifetime supervised release will be

12   imposed to follow the period of incarceration.

13         No fine will be imposed because the Court makes a

14   finding this defendant is not in a position to pay any

15   meaningful fine now or in the reasonable future.  There is,

16   however, a mandatory special assessment of $200 that must be

17   paid.

18         In terms of supervised release, the terms of

19   supervised release are, first, the mandatory conditions that

20   the defendant not commit another federal, state, or local

21   crime; that he not unlawfully possess a controlled substance;

22   that he cooperate in the collection of DNA; that he comply with

23   the requirements of the Sexual Offender Registration and

24   Notification Act.  But the remaining condition, the drug

25   testing condition, is suspended based upon the Court's

M4s2RosS kjc

1    determination that he poses a low risk of future substance

2    abuse.

3            There will also be imposed the standard conditions of

4    supervision 1 through 12.  They appear on the face of the

5    judgment and will also be gone over with the defendant when he

6    reports to begin his period of supervised release, which he

7    must do within 72 hours of his release from custody.

8            And finally, there are the special conditions:

9            First, that he is restricted from viewing, accessing,

10   possessing and/or downloading any sexually explicit material

11   involving minors;

12           Second, that he will submit his person and any

13   property, residence, vehicle, papers, computer, and other

14   electronic commitment equipment, data storage devices, cloud

15   storage or media and effects to a search if needed by the

16   probation office;

17           Third, that he will not have any deliberate contact

18   with any child under 18 years of age unless approved by the

19   probation office;

20           Fourth, that he will permit the U.S. Probation Office

21   to install any application or software that allows it to survey

22   and/or monitor his computer and similar activity;

23           Fifth, that he will not access any websites, chat

24   rooms, instant messaging or social networking sites that would

25   violate the terms of service of that site;

M4s2RosS kjc

1          Six, that he will undergo a sex offense specific

2    evaluation and participate in an outpatient sex offender

3    treatment and/or outpatient mental health treatment program on

4    the standard terms and conditions; and

5          Finally, that he will be supervised by the district of

6    his residence.

7          Now, before I advise the defendant of his right of

8    appeal, is there anything else that either counsel needs to

9    raise with the Court?

10          Anything from the government?

11          MR. BODANSKY:  A couple of quick items, your Honor.

12    Apologies if I missed it earlier in the proceeding, but if the

13    Court could confirm that defense and counsel -- ask the

14    defendant and defense counsel if they have each had an

15    opportunity to read and discuss the PSR and comment on any

16    factual inaccuracies in the PSR, that would be appreciated.

17          THE COURT:  So let me ask defense counsel, I think

18    it's clear from your submission that you went over the PSR with

19    your client, you had one objection which was not accepted by

20    the probation office, but am I correct that, with that one

21    exception apart, you and your client have reviewed and had no

22    problem with the PSR.

23          MS. CABRERA:  May I have one moment, please?

24          THE COURT:  Yes.

25          (Defense counsel and defendant confer)

M4s2RosS kjc

1            MS. CABRERA:  Yes, that's correct.

2            THE COURT:  Very good.  Government have something

3    else?

4            MR. BODANSKY:  Only one other matter, your Honor.  In

5    the plea agreement, there is an agreement as to forfeiture of

6    two electronic devices.  The government would ask the Court

7    include that.

8            THE COURT:  Did you submit an order?

9            MR. BODANSKY:  We have not submitted an order of

10   forfeiture, your Honor, but --

11           THE COURT:  Why not?

12           MR. BODANSKY:  We neglected to do so.  We can do that

13   promptly after this proceeding.

14           THE COURT:  All right.  Any objection to that?

15           MS. CABRERA:  May I have one moment?

16           (Defense counsel and defendant confer)

17           MS. CABRERA:  No objection, your Honor.

18           THE COURT:  All right.  So submit that order by

19   tomorrow.

20           Anything from defense counsel?

21           MS. CABRERA:  One other thing to note.  We would ask

22   that, in terms of where he is housed, if Mr. Rosato could be

23   sent to a facility --

24           THE COURT:  I'm sorry.  Again, you need to speak a

25   little louder.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

M4s2RosS kjc

1          MS. CABRERA:  I apologize.  With respect to where

2     Mr. Rosato is housed, we would ask for a facility near New York

3     City or Augusta, Georgia.

4          THE COURT:  I'm happy to recommend that.  As I'm sure

5     you have already told your client, I cannot order it, but I

6     will certainly recommend it.

7          MS. CABRERA:  Thank you, your Honor.

8          THE COURT:  So, Mr. Rosato, you have a right to appeal

9     this sentence.  Do you understand that?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  And if you can't afford counsel for the

12     appeal, the Court will provide one for you free of charge.  Do

13     you understand that?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Very good.  Thanks a lot.

16          MR. BODANSKY:  Your Honor, the government does also

17     move to dismiss Count Two of the superseding --

18          THE COURT:  Oh, yes, thank you for mentioning that.

19          THE DEPUTY CLERK:  And there is an underlying?

20          MR. BODANSKY:  Yes, Count Two of both the underlying

21     indictment and the superseding indictment.

22          THE COURT:  Yes, that is granted.  Thanks a lot.

23                              oOo

24

25